1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK WAYNE BLACKWELL, | No. C 07-02170 JF (PR) |
| Petitioner, | ORDER GRANTING MOTION TO DISMISS |
| vs. | |
| SHIRLEY HARRY, Warden, et al., | |
| Respondent. | (Docket No. 8) |

Petitioner, a prisoner incarcerated in Michigan pursuant to a California conviction and sentence, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state conviction. Respondent has moved to dismiss the petition as untimely. (Docket No. 8.) Petitioner filed an opposition to which Respondent filed a reply. Petitioner has also filed a reply to Respondent's reply. For the reasons discussed below, the Court grants Respondent's motion.

## BACKGROUND

In 1993, Petitioner pled guilty in San Francisco County Superior Court of first degree murder. Petitioner was sentenced to twenty-five years to life in state prison. At the time of his conviction and sentence he was serving a sentence on different charges in Michigan. The sentence for his California murder conviction was imposed to run

1  concurrently with his Michigan sentence, and consequently he is serving his sentence in a

2  Michigan state prison.

3      Petitioner did not appeal his conviction.  In October 2004, Petitioner filed a

4  petition for a writ of habeas corpus in the trial court, and it was denied on December 7,

5  2004.  On July 21, 2005, Petitioner filed a second habeas petition in the trial court, and it

6  was denied on September 21, 2005.  On November 23, 2005, he filed a habeas petition in

7  the California Court of Appeal and it was denied on January 25, 2006.  On April 10,

8  2006, he filed a habeas petition in the California Supreme Court, and it was denied on

9  December 20, 2006.  On April 19, 2007, Petitioner filed the instant federal petition.

10                                          **DISCUSSION**

11  A.    Statute of Limitations

12      The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became

13  law on April 24, 1996, and imposed for the first time a one-year statute of limitation on

14  petitions for a writ of habeas corpus filed by state prisoners.  The one-year period

15  generally will run from "the date on which the judgment became final by conclusion of

16  direct review or the expiration of the time for seeking such review."  28 U.S.C. §

17  2244(d)(1)(A).[1]

18      Where, as here, a Petitioner does not seek direct review in the state court of

19  appeals or the state supreme court, the limitation period will begin running the day after

20  the date on which the time to seek such review expires, see Smith v. Duncan, 297 F.3d

21  809, 812-13 (9th Cir. 2002), which, in California, is 60 days after the entry of judgment,

22  see Cal. Rule of Court 31(a).  In the instant case, the trial court judgment was entered in

23  July 1993, and the limitation period began to run 60 days later, in September 1993.  In

24  such a case, where the conviction became final prior to AEDPA's enactment on April 24,

25  1996, AEDPA's one-year statute of limitation began to run on April 25, 1996, and

26  expired one year later, on April 24, 1997.  Malcom v. Payne, 281 F.3d 951, 955 (9th Cir.

27

28      [1]In rare instances not presented in this case, the limiations period may start on a different date.
    See 28 U.S.C. § 2244(d)(1)(B)-(C).

1    2002).  The instant petition was not filed until nearly ten years later.  Thus, absent tolling,

2    the instant petition is untimely.

3    B.    Tolling

4        Section 2244(d)(2) tolls the one-year limitation period for the "time during which a

5    properly filed application for State post-conviction or other collateral review with respect

6    to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Petitioner did

7    not file his first state habeas petition until October 2004, over seven years after the

8    limitation period had expired.  A state habeas petition filed after AEDPA's statute of

9    limitation ended cannot toll the limitation period under § 2244(d)(2).  See Ferguson v.

10   Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th

11   Cir. 2001).  Consequently, Petitioner is not entitled to tolling of the limitation period

12   under 28 U.S.C. § 2244(d)(2) during the pendency of his state habeas petitions.

13       Petitioner claims that he is entitled to equitable tolling for the entire period

14   between the commencement of the limitation period in 1996 until his filing of the instant

15   petition.  Equitable tolling will not be available in most cases because extensions of time

16   should be granted only if "extraordinary circumstances beyond a prisoner's control make

17   it impossible to file a petition on time."  Calderon v. United States District Court (Beeler),

18   128 F.3d 1283, 1288 (9th Cir. 1997) (citation and internal quotation omitted).   The Ninth

19   Circuit has held that the petitioner bears the burden of showing that this "extraordinary

20   exclusion" should apply to him.  Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

21   The petitioner must establish two elements in order to be granted equitable tolling: "(1)

22   that he has been pursuing his rights diligently, and (2) that some extraordinary

23   circumstance stood in his way."  Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir.

24   2006) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 419 (2005)).  When a prisoner is

25   proceeding pro se, his allegations regarding diligence in filing a federal petition on time

26   must be construed liberally.  Roy v. Lampert, 455 F.3d 945, 950 (9th Cir. 2006).

27       The prisoner also must show that "the 'extraordinary circumstances' were the

28   cause of his untimeliness."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)

1   (citations omitted).  Where a prisoner fails to show "any causal connection" between the

2   grounds upon which he asserts a right to equitable tolling and his inability to timely file a

3   federal habeas application, the equitable tolling claim will be denied.  Gaston, 417 F.3d at

4   1034-35 (holding that where prisoner fails to show causal connection between self-

5   representation on direct appeal or physical and mental disabilities and inability to timely

6   file petition, district court's finding that he was not entitled to equitable tolling where he

7   had earlier filed a state habeas petition was not clear error).

8        Petitioner argues that the limitation period should be equitably tolled because the

9   law library at his prison did not have materials regarding the AEDPA limitation period

10   until 2001.[2]  Even assuming, for the purposes of this motion that Petitioner is entitled to

11   equitable tolling until the AEDPA materials became available to him in 2001, see

12   Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (petitioner's

13   inability to access information about the statute of limitations deadline may constitute

14   grounds for equitable tolling), Petitioner has not asserted a sufficient basis for tolling

15   between 2001 and October 2004, the earliest possible date that statutory tolling might

16   commence.[3]

17        Petitioner argues that he is indigent, a layman and had limited education until he

18   received his G.E.D. until 1998.  Petitioner's lack of legal experience does not constitute

19   an extraordinary circumstance warranting equitable tolling, see Raspberry, 448 F.3d at

20   1154, nor does his indigence, Cantu-Tzin v. Johnson, 162 F.3d 295, 299-300 (5th Cir.

21   1998) (pro se status during state habeas proceedings did not justify equitable tolling).

22        Petitioner also argues that he was unable to access California law because he was

23   housed at a prison in Michigan, however.  Petitioner's allegations, even liberally

24   _____

25        [2]Petitioner does not specify when in 2001 these materials became available.

26        [3]It is far from clear as to how much statutory tolling Petitioner would be entitled to based on
27   his state court habeas petitions.  To the extent they were denied as untimely, there would be no
     tolling during the periods in between the petitions.  The Court need not reach this issue,
28   however, because, for the reasons discussed below, there is not basis for equitable tolling beyond
     2001.

1   construed, fail to establish his diligence in seeking such legal resources or pursuing his

2   claims between 2001 and 2004.[4]  He makes the conclusory allegation that "[f]rom 1998 to

3   2003" he "diligently used the minimal resources available to him."  (Opp. at 10-11.)  The

4   only specific effort Petitioner describes during this period is a "request" for California

5   legal materials that was denied by Michigan authorities.  (Id. at 11.)  Petitioner offers no

6   details of such requests, such as when or how often they were made, what materials were

7   requested and whether they related to his claims, or why the requests were denied.  As

8   such, there is no indication that the requests were made between 2001 and 2004.

9   Petitioner alleges no other efforts he made between 2001 and 2004 to obtain the materials

10  he needed or to pursue his claims in state or federal court.  As such, Petitioner's

11  allegations of unspecified requests for legal materials over the six-year period from 1998

12  to 2003, does not establish that he was diligently pursuing his claims.  Plaintiff alleges

13  that from 2004 onward he began to obtain the assistance of law library clerks, transcripts,

14  investigation reports, witness statements, and relevant California law, and to pursue his

15  claims in state habeas petitions.  (Id. at 11-13.)  Petitioner offers no non-conclusory

16  allegation establishing that, with the exercise of diligence, he could not have expended

17  these efforts earlier, in 2001, when the AEDPA materials became available to him.

18      Elsewhere in his opposition, Petitioner also asserts that his trial counsel allegedly

19  misadvised him in 1993 that his guilty plea precluded him from filing a direct appeal of

20  his conviction and sentence.[5]  (Id. 8-9.)  Petitioner does not assert that this entitles him to

21  equitable tolling, but the Court nevertheless notes that it does not.  See Frye v. Hickman,

22  273 F.3d 1144, 1146 (9th Cir. 2001) (counsel's negligence, such as miscalculation of

23  limitation period, does not warrant equitable tolling); Cousin v. Lensing, 310 F.3d 843

24  (5th Cir. 2002) (attorney neglect and error does not warrant equitable tolling).

25  ───────────

26      [4]He states that he wrote a letter to a California judge and tried to contact attorneys and legal
    organizations for assistance in 1997.  He alleges no effort to obtain the California law he needed
27  between 1993 and 1997.

28      [5]A limited right of appeal remains following a guilty plea in California.  See Cal. Pen. Coce §
    1237.5; People v. DeVaughn, 18 Cal.3d 889, 895-96 (1977).

1    In sum, Petitioner is not entitled to statutory tolling because his state habeas

2    petitions were filed after the limitation period had expired.  Additionally, even liberally

3    construing Petitioner's allegations in his favor, he has not set forth a basis for equitable

4    tolling beyond 2001, which is far short of the time necessary to render the instant petition

5    timely.[6]

6    C.    Actual Innocence

7    Petitioner argues that he should be excused from the AEDPA limitations period on

8    grounds of "actual innocence."  In Schlup v. Delo, 513 U.S. 298, 316 & n.16 (1995), the

9    United States Supreme Court held that petitioners may avoid procedural bars to

10   consideration of the merits of their petitions if they can establish "actual innocence."  This

11   "actual innocence gateway" has been applied after the enactment of AEDPA, see Griffin

12   v. Johnson, 350 F.3d 956, 960, 963 (9th Cir. 2003), and, although the issue has not been

13   resolved definitively by the Ninth Circuit, such relief may well be available to avoid

14   dismissal of a petition that otherwise would be time-barred by AEDPA, see Majoy v.

15   Roe, 296 F.3d 770, 776-77 (9th Cir. 2002) (remanding to district court for determination

16   of whether actual innocence established before deciding whether gateway available under

17   AEDPA).  Nevertheless, even if a showing of actual innocence under Schlup does excuse

18   the untimeliness of a habeas petition, Petitioner cannot make that showing in this case.

19   To pass through the Schlup gateway, a petitioner must demonstrate a colorable

20   claim of actual innocence, i.e., that the petitioner is, "innocent of the charge for which he

21   is incarcerated."  See Schlup, 513 U.S. at 321.  "Actual innocence" means factual

22   innocence, not merely legal insufficiency.  See Bousley v. United States, 523 U.S. 614,

23   623-24 (1998).  It is not enough that the evidence shows the existence of reasonable

24   doubt; petitioner must show "it is more likely than not that no 'reasonable juror' would

25

26   [6]For the same reasons, Petitioner's arguments do not establish grounds for delaying the
     commencement of the limitation period beyond 2001 based on an "impediment" to his filing his
27   federal petition that he could not have overcome with the exercise of due diligence.  See 28
     U.S.C. § 2244(d)(1)(B) (providing that limitation period may start on date "an impediment to
28   filing an application created by State action in violation of the Constitution or laws of the United
     States is removed, if the applicant was prevented from filing by such State action").

1  have convicted him." See Schlup, 518 U.S. at 329.  A petitioner may pass through the

2  Schlup gateway "if all the evidence, including the new evidence, makes it 'more likely

3  than not that no reasonable juror would have found petitioner guilty beyond a reasonable

4  doubt.'"  See Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002) (quoting Schlup,

5  513 U.S. at 327).  In the vast majority of cases, such persuasive new evidence is

6  unavailable, and, as a result, claims of actual innocence are rarely successful.  See Schlup,

7  518 U.S. at 324.

8      The Court has reviewed the evidence described by Petitioner and finds no credible

9  claim of "actual innocence."[7]  Petitioner confessed to the police, and admits here, that the

10  victim propositioned Petitioner, who was a chronic drug abuser at the time, for an act of

11  prostitution, that he accompanied the victim to the victim's apartment to commit said act,

12  that the victim began to "assault" Petitioner, that after a short pause a "full-blown fight"

13  erupted, and that Petitioner took out a four-inch knife from his pocket, stabbed the victim

14  multiple times, and left the apartment while the victim was still alive.  (Brief Attached to

15  Petition at 1-2, 6(e)-(f).) There were no eyewitnesses to the crime, but a neighbor told the

16  police that he heard noises that corroborated Petitioner's account of the altercation in the

17  apartment.  (Id. at 2, 6(f).)

18      Petitioner argues here that the evidence demonstrates that Dennis Redmond, whom

19  the police initially investigated, subsequently came to the apartment and killed the victim,

20  and alternatively that the killing amounted to no more than voluntary manslaughter.  (Id.

21  at 6(a)-(i).)  The evidence Petitioner contend establishes Redmond's guilt consists of

22  witness statements that Redmond had previously lived with the victim, went to the

23  victim's apartment to look for him, and brought the police to the victim's apartment.

24  According to Petitioner there was evidence that the door to the apartment was unlocked

25  and the victim was alive when Petitioner left, and when Redmond brought the police to

26  the apartment he knew that there was a bloody footprint on the toilet.  Petitioner also

27

28      [7]Petitioner cites to his petition where he sets forth his "actual innocence" argument.  (See Petition at 6(a)-6(i).)

1    alleges that Redmond flew to Pennsylvania shortly after, and the police found towels in

2    Redmond's apartment with drops of blood on them.

3            This evidence far from establishes Petitioner's factual innocence.  The fact that

4    Redmond might have had access to the victim's apartment, after Petitioner stabbed the

5    victim far from establishes that Redmond was the killer.  Even if he entered the

6    apartment, the victim may well have been dead already, and Redmond may well have left

7    town because he was distraught over discovering the murder of his former roommate.  As

8    Petitioner indicates, Redmond remained available to speak to the police and the police

9    decided that Redmond was not the killer after interviewing him, conducting a polygraph

10   examination, and determining that Redmond's blood did not match the foreign blood

11   found at the scene.  In addition, the blood found on towels in Redmond's apartment were

12   not tied to the victim.  In light Petitioner's confession to stabbing the victim multiple

13   times with a four-inch knife, and the lack of any direct evidence that Redmond was

14   involved in any way in killing the victim, there is no reasonable probability that no

15   reasonable juror could that Petitioner, and not Redmond, murdered the victim.

16          Similarly, Petitioner's manslaughter argument also fails.  While Petitioner's

17   confession could support a finding that Petitioner killed the victim in the heat of passion,

18   the confession also supports, and certainly does not preclude, a finding beyond a

19   reasonable doubt that, after being propositioned for an act of prostitution, Petitioner

20   intended to kill the victim when he brought a knife to the victim's apartment and stabbed

21   him multiple times.  Given this evidence, Petitioner would have to present far more

22   persuasive evidence than his own testimony that he did not intend to kill the victim,

23   testimony that would have been both self-serving and uncorroborated.

24          In sum, Petitioner has failed to demonstrate that no reasonable juror would have

25   convicted Petitioner of murder, and, as a result, Petitioner does not pass through the

26   "actual innocence" gateway under Schlup.  Accordingly, the untimeliness of the instant

27   petition under AEDPA is not excused.

28   //

1

**CONCLUSION**

2          For the foregoing reasons, Respondent's motion to dismiss the petition as untimely

3   (Docket No. 8) is GRANTED.  The instant petition for a writ of habeas corpus is

4   DISMISSED.

5          The Clerk shall enter judgment and close the file.

6          IT IS SO ORDERED.

7

8   DATED: ___8/26/08_____          _____
                                                    JEREMY FOGEL
9                                                   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28